UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 25-CR-191(NRM)

-against- : United States Courthouse
: Brooklyn, New York

IURII GUGNIN, : Wednesday, April 1, 2026
: 2 o'clock p.m.

Defendant.

- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

For the Government: UNITED STATES ATTORNEY'S OFFICE
EASTERN DISTRICT OF NEW YORK
271 Cadman Plaza East
Brooklyn, New York 11201
BY: MATTHEW C. SKURNIK
Assistant United States Attorney

For the Defendant: SQUIRE PATTON BOGGS (US) LLP
1120 Avenue of the Americas-13th Floor
New York, New York 10036
BY: THOMAS A. FIRESTONE, ESQ.
TAMARA ROZINA, ESQ.

Court Reporter: Linda A. Marino, Official Court Reporter
225 Cadman Plaza East/Brooklyn, NY 11201
lindacsr@aol.com

Proceedings recorded by mechanical stenography, transcript produced by Computer-Aided Transcription.

THE COURTROOM DEPUTY: This is criminal cause for a plea hearing in Docket No. 25-CR-191, USA v. Iurii Gugnin.

Will the parties please state their appearances for the record starting with the Government?

MR. SKURNIK: Good afternoon, your Honor. Matthew Skurnik for the United States. I'm joined by paralegal specialist Matthew Jennings.

THE COURT: Good afternoon to you both.

And for the Defendant?

MR. FIRESTONE: Good afternoon, your Honor. Thomas Firestone for the Defendant Iurii Gugnin. Also with me is Tamara Rozina, who is of counsel at our law firm, Squire Patton Boggs.

THE COURT: Good afternoon to you all.

And good afternoon, Mr. Gugnin.

THE DEFENDANT: Good afternoon, your Honor.

THE COURT: Before we get started, sir, I just want to first confirm that you speak and understand English.

Is that correct?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: So, if at any point something isn't clear or you need to have something repeated or rephrased for any reason -- it's a big courtroom, you might not hear something fully, for example -- don't be shy, let Mr. Firestone know, and he will alert me, and we will take a

moment to repeat or rephrase anything that might not be clear.

Okay?

THE DEFENDANT: Yes.

THE COURT: In addition, if you want to speak with your counsel at any time, he or you can alert me, and I will take a short recess for you to speak with your counsel privately about anything you need to discuss.

Okay?

THE DEFENDANT: Okay.

THE COURT: Very good. So, I'm advised, Mr. Gugnin, that we're here today because you are intending to waive indictment and plead to charges that would be filed against you in a superseding information.

Is that correct?

THE DEFENDANT: Yes.

THE COURT: This is, of course, a very serious decision, sir, so I need to make sure that you understand all of your rights and the consequences of any waiver and plea. I will need to ask you a number of questions and I will require that your answers to those questions be made under oath.

So at this time, my courtroom deputy will swear you in. If you could please stand and raise your right hand.

Do you solemnly swear or affirm that your answers to the Court's questions will be the truth, the whole truth, and nothing but the truth?

THE DEFENDANT: Yes, ma'am.

THE COURT: You may be seated. Thank you.

Do you understand, sir, that having been sworn, your answers to my questions will be subject to the penalties of perjury or making a false statement if you do not answer them truthfully.

THE DEFENDANT: Yes, ma'am.

THE COURT: What that could mean is that if you answer any of the questions falsely, the Government could prosecute you for perjury or making a false statement. And they could use any statements that you make as evidence in support of that prosecution if they allege those are false.

Do you understand that risk?

THE DEFENDANT: Yeah, I do.

THE COURT: I also need you to understand, Mr. Gugnin, this case is assigned to the Honorable Nina Morrison. She is the judge who will sentence you and make the ultimate decision about whether or not to accept your guilty plea.

You have the absolute right to plead guilty before Judge Morrison if you wish or I will listen to your plea. There's no prejudice to you, though, if you prefer to proceed before Judge Morrison. There's no problem.

If you proceed before me, a transcript will be made of the proceedings and then Judge Morrison will review the

transcript.

Do you understand that process?

THE DEFENDANT: Yes, I do.

THE COURT: Mr. Gugnin, do you wish to give up your right to have Judge Morrison hear your plea and instead proceed before me today as planned?

THE DEFENDANT: Yes, I do.

THE COURT: Are you making your decision to plead before me voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anyone threatened you or have any promises been made to you in order to induce you to plead before me?

THE DEFENDANT: No.

THE COURT: I have before me a form that's been marked as Court Exhibit 3 for purposes of today's proceedings with today's date and the docket number, and it is entitled: Consent to have a plea taken before United States Magistrate Judge Taryn Merkl.

I'm going to hold it up, but if you need me to pass it down I will.

Do you recognize the signature on the line for the Defendant, sir?

THE DEFENDANT: Yeah. It was me.

THE COURT: Did you sign it just moments ago?

THE DEFENDANT: Yes.

THE COURT: Mr. Firestone, is that your signature on the line for defense counsel?

MR. FIRESTONE: Yes, your Honor.

THE COURT: And Mr. Skurnik, who signed it on behalf of the United States?

MR. SKURNIK: I did, your Honor.

THE COURT: Thank you.

Prior to signing this form, Mr. Gugnin, did you have an opportunity to read it?

THE DEFENDANT: Yes.

THE COURT: Did you discuss it with Mr. Firestone or Ms. Rozina?

THE DEFENDANT: Yes, I did.

THE COURT: And just to confirm this one more time, this reiterates that you are consenting to have the plea taken before me.

Is that correct?

THE DEFENDANT: That is correct, yeah.

THE COURT: I do find that Mr. Gugnin is fully aware of his right to proceed before the district court judge and is knowingly and voluntarily waiving that right. So, I will sign the form as well and it will be docketed in connection with today's proceedings.

Mr. Gugnin, before accepting your plea there are a

number of questions that I need to ask you to assure myself and ultimately Judge Morrison that the plea is valid. If you do not understand any of the questions, please just say so, and I will reword them.

The first few questions are very straightforward. When we get into the rights that you have under the Constitution, things get a little more complicated. So, again, if you need clarification at any point, no problem.

Starting with some basics, could you please state and spell your full name for the record.

THE DEFENDANT: My full name is Iurii, I-U-R-I-I, Gugnin, G-U-G-N-I-N.

THE COURT: And how old are you, Mr. Gugnin?

THE DEFENDANT: Thirty-nine.

THE COURT: What schooling or education have you had?

THE DEFENDANT: Ph.D.

THE COURT: And where did you study?

THE DEFENDANT: In Russia.

THE COURT: What did you study for your Ph.D.?

THE DEFENDANT: Math and finance.

THE COURT: Are you currently under the care of a doctor or a psychiatrist for any reason?

THE DEFENDANT: No.

THE COURT: In the past 24 hours, have you taken any

drugs, medicine, or pills or drunk any alcohol?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized or treated for drug addiction, alcoholism, or mental or emotional problems?

THE DEFENDANT: No.

THE COURT: As you sit here, is your mind clear?

THE DEFENDANT: Yeah.

THE COURT: Do you understand everything that's going on so far?

THE DEFENDANT: Yes, I do.

THE COURT: Mr. Gugnin, as a defendant in a criminal case, you have a number of rights, including the right to be represented by an attorney at every stage of the proceedings, from when you are first arrested all the way through trial and appeal. If you cannot afford an attorney, the Court will appoint an attorney to represent you.

Do you understand that right to counsel?

THE DEFENDANT: Yes, I do.

THE COURT: Mr. Firestone and Ms. Rozina, are they your attorneys in this case?

THE DEFENDANT: Yes, they are.

THE COURT: If at any time you wish to consult with your attorneys regarding anything at all, again, please just say so and we'll take a short recess, okay?

THE DEFENDANT: Okay.

THE COURT: Have you had any difficulty in communicating with your attorneys?

THE DEFENDANT: No.

THE COURT: Have you had enough time to discuss with them the decision to enter a guilty plea in this case?

THE DEFENDANT: Yes.

THE COURT: Are you fully satisfied with the representation and advice that the attorneys have provided to you thus far?

THE DEFENDANT: Yes.

THE COURT: Mr. Firestone, have you discussed this matter fully with your client?

THE DEFENDANT: Yes.

THE COURT: And have you had any difficulty in communicating with him either directly or through an interpreter?

MR. FIRESTONE: None whatsoever.

THE COURT: Have you been speaking to him primarily in English?

MR. FIRESTONE: In English, yes.

THE COURT: Have you been utilizing the service of an interpreter at all?

MR. FIRESTONE: No, we have not.

THE COURT: I know you speak Russian.

Ms. Rozina, I don't know if you speak Russian.

Have you been speaking Russian, English, or mostly English?

MR. FIRESTONE: Ms. Rozina also speaks Russian. We have spoken Russian occasionally when there are terms that could be better rendered in Russian. But for the most part we've spoken in English and I have no doubt Mr. Gugnin understood everything. When there was a question, then we would explain it in Russian if need be, but was a very rare occasion.

THE COURT: So, based on your knowledge of both languages, you feel he's fully capable of continuing these proceedings in English.

MR. FIRESTONE: Absolutely.

THE COURT: Thank you. And I see Ms. Rozina is also nodding.

In addition to that question about the language, in your professional judgment is Mr. Gugnin capable of understanding the nature of these proceedings?

THE DEFENDANT: Yes, he is.

THE COURT: Are you satisfied that your client also understands the rights that he would waive by pleading guilty?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have any doubts whatsoever about his competence to plead at this time?

MR. FIRESTONE: None whatsoever.

THE COURT: Have you advised him of the maximum sentences and fines that can be imposed in this case?

THE DEFENDANT: Yes, your Honor.

THE COURT: You discussed with him the operation of the sentencing guidelines and how the guidelines could effect his case?

THE DEFENDANT: Yes, we have, your Honor.

THE COURT: Thank you for that.

So, as I have noted at the outset, Mr. Gugnin, my understanding of today's proceedings is that you intend to plead to certain counts that will be filed against you in a superseding information.

Do you have a copy of that information handy, Mr. Firestone?

MR. FIRESTONE: Yes. It's before Mr. Gugnin.

THE COURT: Perfect.

As I'm sure you have discussed at length with your attorneys, Mr. Gugnin, the superseding information would charge you with four counts. It includes a wire fraud conspiracy that is alleged to have occurred in or about and between April 2023 and June 2025.

It also alleges a conspiracy to defraud the United States that is alleged to have occurred between July 2022 and June 2025 in connection with allegedly knowingly and willfully

conspiring to defraud the United States by impairing, impeding, obstructing, and defeating the lawful functions of the Department of Treasury's Office of Foreign Asset Control and the Department of Commerce's Bureau of Industry and Security, which are both agencies of the United States, in the enforcement of export control and economic sanctions law and the issuance of licenses relating to the export of goods and the provision of financial services. So, conspiracy to defraud those agencies is alleged in Count Two with specific overt acts alleged in the indictment.

Count Three alleges a money laundering conspiracy or agreement that is alleged to have occurred in or about and between April 2023 and June 2025. And there are two objects of that conspiracy which we can get into in more detail in a little bit.

And finally, Count Four alleges a violation of the International Emergency Economic Powers Act, commonly referred to as IEEPA, on or about October 6, 2022, in connection with the passage of international wire transfers without first obtaining the required approval of OFAC, the Office of Foreign Asset Control.

So, those are the four counts alleged in the indictment and then there are criminal forfeiture allegations as well.

So, this superseding information, if filed, includes

four serious federal felony charges. Ordinarily, the Government cannot simply come to court and file a charge like this. Ordinarily, the Government is required to present evidence to a grand jury.

And under the Constitution of the United States, you have the right to have evidence presented to a grand jury of at least 16 and not more than 23 persons and to have the grand jury determine whether there is probable cause to believe that you committed a crime that the Government seeks to charge.

To get an indictment, the Government would have to persuade a majority of the members of the grand jury that there is probable cause to believe that you committed the offenses in the proposed information. If the grand jury found probable cause, they could return what is called an "indictment." If not, they would not return any charges against you.

So, if you waive indictment, you would be giving up your right to have the grand jury make a determination about probable cause. You would basically be saying it's okay with you for the Government to come to court and file these felony charges against you.

Do you understand all of that, Mr. Gugnin?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Have you discussed with your counsel the matter of waiving your right to indictment by a grand jury and

proceeding by information?

THE DEFENDANT: Yes.

THE COURT: Do you understand your right to be indicted by the grand jury?

THE DEFENDANT: Yeah, I do.

THE COURT: Mr. Firestone, are you satisfied that your client understands what it means to waive indictment?

MR. FIRESTONE: Yes, I am.

THE COURT: Do you see any reason that he should not waive indictment?

MR. FIRESTONE: No, your Honor.

THE COURT: Mr. Gugnin, has anyone threatened or forced you to waive your right to be indicted by the grand jury?

THE DEFENDANT: No, nobody.

THE COURT: Do you, in fact, wish to waive your right to be indicted by the grand jury?

THE DEFENDANT: No, I mean -- I'm sorry. I am okay with this superseding information without being indicted.

THE COURT: Okay. So, the question I think was phrased in a manner that was confusing.

THE DEFENDANT: Yeah.

THE COURT: To be clear, you are agreeing to waive indictment by the grand jury.

THE DEFENDANT: Yeah, I do.

THE COURT: And you do not object to the Government filing the proposed superseding information.

THE DEFENDANT: I do not object.

THE COURT: I have before me a form marked as waiver of indictment and it is marked with a Court exhibit sticker, Exhibit 2, with today's date and the docket number, and it states: I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me. After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Is that correct, Mr. Gugnin?

THE DEFENDANT: Yes.

THE COURT: Taking a look at Court Exhibit 2, is that your signature on the line for the Defendant?

THE DEFENDANT: Yes, ma'am.

THE COURT: And Mr. Firestone, is that your signature down here?

MR. FIRESTONE: Yes, your Honor.

THE COURT: I do find that Mr. Gugnin fully understands his right to be indicted by the grand jury and is knowingly and voluntarily choosing to waive that right. And the momentary confusion actually underscores, in my view, the depth of his understanding because he caught the error before

anyone else. The record won't really reflect that, but he immediately realized that he answered the question and looked at counsel and paused.

It was clear to me that you understood as soon as you answered that you had just misunderstood the question.

So, despite any possible confusion on the cold record, I am confident that Mr. Gugnin understands his rights and is knowingly and voluntarily waiving his right. And, so, I will sign the waiver form as well.

Mr. Gugnin, I summarized the proposed charges against you a moment ago, but now I would like to just confirm with you, have you fully read the proposed superseding information, including the forfeiture allegation?

THE DEFENDANT: Yes, I did, your Honor.

THE COURT: And having read it and discussed it with your attorney, do you believe that you understand the charges that are set forth in the superseding information?

THE DEFENDANT: Yes, I do.

THE COURT: Have you had a conversation with your attorneys where they went over with you what the Government would have to prove by proof beyond a reasonable doubt with respect to these charges if the case proceeded to trial?

THE DEFENDANT: Yes, but I'm okay with the plea.

THE COURT: Okay. Just want to make sure you understand all the things the Government would have to prove,

so I'm going to go over that with you now. And then later, we will hear your allocution. We need to make sure that all of the elements of each offense are met by the allocution.

Count One alleges a wire fraud conspiracy. In order to prove a wire fraud conspiracy as alleged in Count One, under Title 18, United States Code, Section 1349, the Government has to prove two essential elements: First, two or more persons entered into an agreement to commit a wire fraud; and, second, that you knowingly and intentionally became a member of that agreement and joined that conspiracy.

The elements of wire fraud, the goal or purpose of that agreement, include: First, that there was a scheme or artifice to defraud or obtain the money or property by means of materially false or fraudulent pretenses, representations, or promises; second, that the Defendant knowingly and intentionally participated in a scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud; and, third, that the execution of the scheme contemplated the use of interstate or foreign wires. That's Count One.

Count Two is a conspiracy to defraud the United States alleged under Title 18, United States Code, Section 371. In order to prove your guilt of a conspiracy under that statute, the Government would have to prove essentially four elements the way it's charged in this indictment.

First, that two or more persons entered into an unlawful agreement. The specific agreement charged in the information -- that is, the agreement to defraud the United States by impairing, impeding, obstructing, or defeating the lawful functions of the U.S. Department of the Treasury's Office of Foreign Assets Control, or OFAC, and the United States Department of Commerce's Bureau of Industry and Security, in the enforcement of the economic sanctions laws and regulations, the issuance of licenses relating to exported goods in the possession of financial services.

So, the first element, there was an agreement to defraud the United States with regard to those two agencies.

Second, that the Defendant knowingly and willfully became a member of that conspiracy or agreement.

Third, that one of the members of the conspiracy knowingly committed at least one overt act alleged in the indictment.

And fourth, that that overt act was committed to further some objective of the conspiracy.

So, that's Count Two, four elements.

Count Three --

MR. SKURNIK: Your Honor, if I could just jump in there.

THE COURT: Yes.

MR. SKURNIK: I believe the overt act requirement

for Count Two, I don't believe that the Defendant must allocute to one of the overt acts alleged in the indictment but, instead, must allocute just to an overt act.

THE COURT: He does not need to allocute that one of the overt acts was committed that's in the indictment, I agree with you. But that is an element you would have to prove at trial.

MR. SKURNIK: Yes, I agree with that, your Honor.

THE COURT: Do you see the distinction, Mr. Gugnin?

THE DEFENDANT: Not really.

THE COURT: So, in order to prove your guilt at trial, the Government would have to prove one of the overt acts alleged --

THE DEFENDANT: Oh, okay, yes.

THE COURT: But when you allocute later, you can allocute to an overt act in furtherance of the conspiracy that is not alleged in the indictment.

THE DEFENDANT: Okay.

THE COURT: But to prove your guilt at trial, they would have to prove up what's in the actual indictment.

Do you agree with that, Mr. Firestone?

MR. FIRESTONE: Yes, your Honor.

THE COURT: Mr. Skurnik, does that help clarify?

MR. SKURNIK: Yes, your Honor. Thank you.

THE COURT: Thank you for the clarification,

Mr. Skurnik. We're all on the same page.

Four Count Three, Mr. Gugnin, this one is complicated because the money laundering conspiracy has two different objects.

To prove your guilt of the money laundering conspiracy itself, the Government has to only prove two elements: First, that at least two people entered into an agreement to engage in money laundering; and, second, that the Defendant -- you -- knowingly and intentionally joined that conspiracy, became a part of that agreement.

Then the tricky part is the purposes, the goals, of the underlying conspiracy.

As alleged in the superseding information, the unlawful purposes of the conspiracy included: One, the international transportation, transmission, or transfer of funds with the intent to promote and conceal specified unlawful activity and engaging in one or more monetary transactions within the United States in criminally-derived property of a value greater than $10,000 and which property was derived for one or more specified unlawful activities.

With regard to the first goal or object, the goal of laundering money with the intent to promote and conceal specified unlawful activity, there are two underlying elements.

First, that the Defendant transported or attempted

to transport a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from and through a place outside the United States.

Second, that the Defendant acted with the intent or purpose to either promote the carrying on of specified unlawful activity or to conceal or disguise the nature, location, source, ownership, or control of the proceeds, specified unlawful activity, or to avoid one or more transaction reporting requirements under federal or state law.

That's object one.

The second object or purpose of the conspiracy charged in Count Three is engaging in transactions and criminally-derived property.

To prove the underlying purpose, the Government would have to show: First, that the Defendant engaged in a monetary transaction in or effecting interstate commerce.

Second, that the monetary transaction involved criminally-derived property of a value greater than $10,000.

Third, that the property was derived from specified unlawful activity.

Fourth, that the Defendant acted knowingly; that is, with knowledge that the transaction involved proceeds of a criminal offense.

And fifth, that the transaction took place in the

United States.

So, to sum up, for Count Three the Government would have to prove that you entered into an agreement knowingly and voluntarily to do those things.

Does that make sense?

THE DEFENDANT: Yes, your Honor.

THE COURT: Thank you.

Finally, as to Count Four, the alleged violation of the *International Economic Emergency Powers Act*, or IEEPA, the Government would have to prove four essential elements.

First, that the Defendant was a United States person, which includes any person physically present in the United States.

Second, that the Defendant contributed or provided funds, goods, or services by, to, or for the benefit of JSC Alpha Bank, a specially designated national, received a contribution or provision of funds, goods, or services through JSC Alpha Bank, or caused another to do so.

Third, that the Defendant acted willfully.

And fourth, that the Defendant did not obtain the necessary license or licenses from the United States Department of Treasury's Office of Foreign Asset Control.

So, do you understand the essential elements of Count Four, the IEEPA charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Skurnik, anything else that we should clarify as the essential elements of the four offenses alleged in the superseding information?

MR. SKURNIK: No, your Honor. Thank you.

THE COURT: Mr. Firestone, do you believe that I have correctly summarized the essential elements?

MR. FIRESTONE: Yes, your Honor.

THE COURT: Thank you both very much.

Mr. Gugnin, what I'd like to do now is go over the rights that you have and the rights that you would waive by pleading guilty.

First of, all you have the right to plead not guilty.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: What that means is that even in you are guilty, you have a choice. It is up to you to decide what to do; not your lawyer or anyone else. You may withdraw your previously entered plea of not guilty and plead guilty, as you apparently wish to do, or you may choose to go to trial simply by persisting in your plea of not guilty.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: If you plead not guilty to the charges, you would have the right under the Constitution and laws of

the United States to a speedy and public trial before a jury with the assistance of your attorney on the charges contained in the superseding information.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: At any trial, you would be presumed innocent. You would not have to prove that you are innocent. Under our legal system, it is the Government that has the burden to prove beyond a reasonable doubt that a defendant is guilty of the crimes charged.

If at any trial the Government failed to meet that burden of proof, the jury would have to find you not guilty.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: During the course of any trial, witnesses for the Government would have to come to court and testify in your presence. Your lawyer would have the right to cross-examine each witness, to object to evidence offered by the Government, and could offer evidence on your behalf.

Do you understand that?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT: Your lawyer would also have the right to subpoena or compel witnesses to come to court to testify.

Do you understand that as well?

THE DEFENDANT: Yes.

THE COURT: At trial, you would have the right to testify on your behalf but only if you wanted to. You cannot be forced to testify if you don't want to. Under the Constitution and laws of the United States, no person can be forced to be a witness against himself. And if you had a trial and did not testify, Judge Morrison would instruct the jury that they could not hold that against you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If instead of going to trial you plead guilty to the crimes charged and Judge Morrison accepts your guilty plea, you would be giving up your constitutional rights to a trial and all of the other rights that I've just discussed with you. There would be no trial in this case, the Court would simply enter a judgment of guilty based upon your plea.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you do plead guilty, I will need to ask you questions about what you did in order to satisfy myself and, ultimately, Judge Morrison that you are, in fact, guilty of the crimes charged. You would need to answer those questions and acknowledge your guilt. This would mean you would be giving up your right not to testify against yourself.

Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Also, if you enter a plea of guilty today and you admit the criminal conduct alleged in the proposed charges and Judge Morrison accepts your plea, you could not appeal to a higher court on whether you committed the crimes charged. That determination would be over, resolved, as a result of your guilty plea.

Do you understand that, Mr. Gugnin?

THE DEFENDANT: Yes, your Honor.

THE COURT: Mr. Gugnin, are you willing to give up your right to a trial and the other rights that I've just discussed with you?

THE DEFENDANT: Yes.

THE COURT: I have before me a written agreement between yourself and the Government that has been marked as Court Exhibit 1, and I'm going to turn to the final page.

Mr. Gugnin, is that your signature on the final page of Exhibit 1?

THE DEFENDANT: Yes, your Honor.

THE COURT: You can see it?

THE DEFENDANT: Yes.

THE COURT: Is that your signature on the final page?

THE DEFENDANT: Yes, it's my signature.

THE COURT: Mr. Firestone, is that your signature

for counsel?

MR. FIRESTONE: Yes, it is, your Honor.

THE COURT: And Mr. Skurnik, can you please identify for me who signed it on behalf of the United States?

MR. SKURNIK: So, it's signed by myself, AUSA Matthew Skurnik; and also by Alexander Mindlin, as the Supervising Assistant U.S. Attorney and he's the co-chief of the National Security and Cybercrimes Section of the U.S. Attorney's Office.

THE COURT: Thank you.

Mr. Gugnin, prior to signing it, did you read this written agreement carefully?

THE DEFENDANT: Yes, I did.

THE COURT: Did you discuss it with your attorney?

THE DEFENDANT: Multiple times, yes.

THE COURT: Do you believe that you understand the written agreement?

THE DEFENDANT: Yes.

THE COURT: Mr. Skurnik, does the Government represent the written agreement before the Court marked as Court Exhibit 1 contains the entirety of any understanding that the United States Attorney's Office has reached with this defendant?

MR. FIRESTONE: Yes, your Honor.

THE COURT: Mr. Firestone, have you read and

reviewed the written agreement with your client?

MR. FIRESTONE: Yes, I have.

THE COURT: Does the written agreement that has been marked as Court Exhibit 1 contain the entire agreement that your client has entered into with the Government?

MR. FIRESTONE: It does.

THE COURT: Mr. Gugnin, as I'm sure Mr. Firestone has warned you, we will be going over the agreement in some detail. But as you sit here now, is there anything that you still have questions about?

THE DEFENDANT: No, I'm okay.

THE COURT: Do you have a copy of the agreement handy?

MR. FIRESTONE: I think we handed up the --

THE COURT: Ms. Chan has a spare.

MR. FIRESTONE: Thank you.

THE COURT: Mr. Gugnin, if I could direct your attention to Page 4, the bottom of Page 4, the final paragraph on Page 4, that language there indicates --

Have you been able to get to Page 4?

THE DEFENDANT: It's Paragraph 3?

THE COURT: Yes, exactly.

THE DEFENDANT: Yes.

THE COURT: So, that language there indicates that you have agreed not to file an appeal or otherwise challenge

your conviction or the incarceratory portion of your sentence if the Court imposes a term of imprisonment of 97 months or below.

Do you see that language in your agreement, sir?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that that language means that if Judge Morrison sentences you to 97 months or less you are not permitted to file an appeal or any other type of collateral attack on your conviction, like a habeas corpus petition or any other type of application.

All of those rights to try to attack the conviction are waived if you are sentenced to 97 months or less; do you understand that, sir.

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition, that paragraph indicates that you have agreed not to file an appeal or otherwise challenge the duration of your supervised release term if it is less than or equal to the statutory maximum.

Do you see that language?

THE DEFENDANT: Yes.

THE COURT: Do you understand that supervised release is sort of like being on probation?

After being released from prison, you would be on supervised release with a probation officer and you would have a number of rules to follow. If you receive a term of

supervised release that is less than or equal to the statutory maximum, you're agreeing not to file an appeal about that or challenge it in any way.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Finally, you've also agreed not to file an appeal or otherwise challenge any condition of supervised release about which the Defendant has notice prior to sentencing and an opportunity to object.

Do you see that language?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that that is part of your agreement?

THE DEFENDANT: Yes.

THE COURT: Do you understand that what that means, essentially, is that if the probation department gives you notice of all the possible terms of supervised release that they are recommending and Judge Morrison chooses to impose those terms, you cannot come back to court later and argue that those terms were improperly applied to your sentence by appealing it or coming back to court at a later date?

Do you understand any argument about those terms is waived as a result of this provision?

THE DEFENDANT: The only thing is, can I ask question?

So, it says --

THE COURT: Maybe you want to ask Mr. Firestone first.

THE DEFENDANT: Yes, I do.

(Pause in proceedings.)

THE COURT: You were asking about the opportunity to object. That notice and opportunity to object would normally be at the time of the sentencing itself.

THE DEFENDANT: Okay.

THE COURT: Does that make sense?

THE DEFENDANT: Yes.

THE COURT: So, if you get notice before sentencing about any possible terms of supervised release and you have an opportunity to contest that and object to them before sentence is imposed, then you could not later challenge that.

Does that make sense?

THE DEFENDANT: Yeah, that's correct.

THE COURT: Thank you. And you understand that's part of your agreement?

THE DEFENDANT: Yes.

THE COURT: Thank you.

In addition, there are a number of penalty provisions set forth in the agreement starting on Page 1. I'd like to carefully go over with you what the penalties are for the crimes to which you will plead guilty.

So Count One, the wire fraud conspiracy, carries a maximum term of imprisonment of 30 years. There is no minimum term.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In addition, the maximum supervised release term for Count One is up to five years to follow any term of imprisonment.

We just spoke a moment ago about supervised release, how you have rules and you have a probation officer. If you violate any of those conditions and rules, the Government and probation department may seek to revoke your supervised release.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If a condition of release is violated, you could be sentenced to up to three years without credit for prerelease imprisonment or time previously served on post release supervision.

Do you understand that, sir?

THE DEFENDANT: Yes, I do.

THE COURT: In addition, for Count One the maximum fine is the greater of $250,000 or twice the gross gain or twice the gross loss.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: In addition, removal is a potential consequence of your plea because you are not a United States citizen.

Is that correct, sir?

THE DEFENDANT: Yes.

THE COURT: So, if you could turn Paragraph 13 of the agreement, Paragraph 13 states that you understand that because you are pleading guilty to Title 18, United States Code, Section 1349 -- this is the wire fraud charge in Count One -- removal is presumptively mandatory.

Do you understand, sir, that although nobody -- not your attorney nor the Court -- can predict with certainty the effect of your conviction on your immigration status, your plea agreement indicates that you recognize that pleading guilty may have consequences and it is very likely presumptively mandatory that you will be removed from the United States as a result of any conviction in this case.

Do you understand that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: So, you can assume that you will be deported at the conclusion of your sentence based upon your guilty plea today.

Is that clear?

THE DEFENDANT: Yes, absolutely.

THE COURT: Are you, nevertheless, willing to plead guilty despite the possible immigration consequences of doing so?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you also understand, sir, that if you are removed you may be denied readmission to the United States in the future?

THE DEFENDANT: Yes, I do.

THE COURT: Does that in any way change your willingness to plead guilty despite the possible long-term consequences of doing so with regard to immigration to the United States?

THE DEFENDANT: No, it doesn't.

THE COURT: Thank you. If I could now ask you to turn back to Page 2.

In addition to removal, which is included as a possible consequence for each of the counts of conviction, there is also a criminal forfeiture allegation that appends to Counts One and Two -- they have it listed as to all counts. So, the criminal forfeiture allegation is detailed at Paragraphs 6 through 12 of your agreement and the criminal forfeiture in this case includes an agreement by you to enter into what's called a forfeiture money judgment.

Do you see the agreement that starts out, "detailed on Paragraph 6," on Page 7, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: And under your agreement, you are agreeing or consenting to the entry of a forfeiture of money judgment in the amount of $1,261,500.00.

Do you understand that that's part of your agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition, you are agreeing to the forfeiture of a number of assets detailed in Paragraphs A through E of Paragraph 6 or on Page 7, including various funds in accounts both at Tether and monies that were seized in a virtual currency wallet ending in MNGW, another account held in the name of EivtaPay.

All of these accounts listed in A through E are assets that you are agreeing to forfeit as part of this forfeiture judgment.

Do you understand that, sir?

THE DEFENDANT: Yes, just to clarify -- sorry for being nervous -- this is all included in the forfeiture money judgment?

THE COURT: Correct. So the 1.2615 million judgment is the total number, and then my understanding, at least as I read the agreement -- Mr. Skurnik will confirm it -- was that all of these monies will be counted towards that amount.

Is that correct, sir?

MR. SKURNIK: Yes, that's correct, your Honor.

THE COURT: Do you have the same understanding, Mr. Firestone?

MR. FIRESTONE: Yes, your Honor.

THE COURT: If you add up all those numbers, you could subtract that from the 1.26 and change million to understand how much more remains on the forfeiture money judgment.

Does that make sense?

THE DEFENDANT: Yes.

THE COURT: In addition to the agreement to forfeit those assets, you have also agreed to complete various paperwork and participate in ensuring that the Government has full information in order to seek to collect on that forfeiture money judgment.

Do you understand that all of these requirements set forth in Paragraphs 6 through 12 pertaining to the forfeiture money judgment are also part of your agreement, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: If I could now go back to Page 2. We're still going through the penalties for Count One, the wire fraud conspiracy.

The final penalty which must be imposed as to each count of conviction is the $100 special assessment.

Now turning to Count Two, the conspiracy to defraud

the United States under Title 18, United States Code, Section 371, the maximum term of imprisonment is five years, the minimum term is zero years. There's no minimum term.

In addition, there's a maximum supervised release term of up to three years to follow any term of imprisonment. If a condition of release is violated -- we talked about that before -- you could be sentenced to two more years without credit for prerelease imprisonment or time previously served on post release supervision.

Do you understand all of that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition, once again, the maximum fine under the statute is the greater of $250,000 or twice the gross gain or twice the gross loss.

Again, penalties could include -- further consequences could include removal. And then you also have agreed to criminal forfeiture as we just discussed. And again, the $100 special assessment must be imposed for each count of conviction.

Do you understand all of that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Turning now to Count Three, the money laundering conspiracy, the maximum term of imprisonment is 20 years. There is no minimum term. Once again, the maximum supervised release term is three years to follow any term of

imprisonment.

If you were to violate supervised release, you could be sentenced to up to two years of additional time in prison without credit for prerelease imprisonment or time previously served on post release supervision.

Do you understand all that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And under the money laundering statute, the maximum fine is $500,000 or twice the value of the property involved in the offense, whichever is greater.

Do you understand that that is the penalty allowable under law?

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition, once again, removal is presumptively mandatory and you have agreed to criminal forfeiture and there is a $100 special assessment as to Count Three.

Count Four, the *International Emergency Economic Powers Act*, includes a maximum term of 20 years of imprisonment, no minimum term; a maximum supervised release term of up to three years to follow any term of imprisonment. Again, if you were to violate that supervised release, you could be sentenced to up to two years without credit for prerelease imprisonment or time previously served on post release supervision.

Do you understand all of that?

THE DEFENDANT: Yes, your Honor.

THE COURT: There's also a maximum fine under the law of up to $1 million and the removal and criminal forfeiture would apply as well.

Do you understand all of that?

THE DEFENDANT: Yes.

THE COURT: And finally, again, the $100 special assessment must be imposed on each count of conviction.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: And last but certainly not least, there's a very important sentence at the end of Paragraph 1. It says: The sentence imposed on each count may run consecutively.

So, what that means, sir, is that Judge Morrison has discretion in this case. She could impose a sentence on each count of conviction so that you have to do all of your time on Count One, then all of your time on Count Two, then all of your time on Count Three, et cetera, et cetera.

Do you understand that's what it would be to be consecutive sentences?

THE DEFENDANT: Yes, your Honor.

THE COURT: She has the discretion to also impose any terms of imprisonment concurrently, meaning that you would

do all of the time for all of the charges at the same time.

Does that make sense?

THE DEFENDANT: Yes.

THE COURT: Do you understand that although Judge Morrison has that discretion, under the law she could impose your sentences to be served consecutively, one after the other?

Do you understand that, sir?

THE DEFENDANT: Yes, your Honor.

THE COURT: Is this anything else moving forward with the penalty provisions, Mr. Skurnik?

MR. SKURNIK: No, your Honor.

THE COURT: So, I'd now like to discuss with you federal sentencing, Mr. Gugnin. And I'm sure Mr. Firestone has explained to you in detail, federal judges have a lot of discretion when the time comes to impose sentence, but no judge has complete discretion at the time of sentencing.

What I mean is this: There are several things that every judge must consider, including the statutory sentences set forth by Congress, the applicable sentencing guidelines, and many other factors set forth by law at Title 18, United States Code, Section 3553(a).

Those factors include, but are not limited to, the facts of the case, your personal history and characteristics, the need for the sentence imposed to reflect the seriousness

of the offense, to promote deterrence and respect for the law, and to provide just punishment for the offense.

The sentencing Court may also consider the kinds of sentences available and what type of sentence is appropriate to provide you, the Defendant, with any needed educational or vocational training, medical care, or other correctional treatment.

There are many, many things that the sentencing Court may consider in deciding what sentence to impose in your case; do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: As I mentioned, one thing the Court must consider is the advisory sentencing guidelines issued by the United States Sentencing Commission. Those guidelines help judges to determine what is a reasonable sentence in a criminal case. While the sentencing guidelines are only advisory, they do remain an important consideration in sentencing and Judge Morrison will certainly take them into account in determining what sentence to give you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have you discussed the sentencing guidelines with your lawyer and how those guidelines are calculated?

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition to the guidelines and all of the other factors I mentioned, the Court is required, as I noted, to consider all the factors set forth in Title 18, United States Code, Section 3553(a), including those that I mentioned a moment ago in order to determine what sentence may be appropriate.

The bottom line is that until the day of sentencing, you cannot know with certainty what guidelines Judge Morrison will decide apply to your case and whether there may be grounds for her to vary from that guideline range one way or the other.

Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Prior to your sentencing hearing, Judge Morrison will receive a presentence report from the probation department, which will recommend a guidelines range. Your counsel will have opportunity to read the presentence report and challenge the facts and guidelines calculation reported by the probation department.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Nevertheless, even though there are some uncertainties, it's important for you to know what the possible guideline sentence could be based upon the facts available at this point in time. But the estimate the

Government may provide you is the party's estimate.

Mr. Skurnik, are you prepared to give an estimate of what the guidelines look like in this case?

MR. SKURNIK: I am, your Honor.

THE COURT: Go ahead.

MR. SKURNIK: So, the Government estimates that all four counts of conviction would group together and that the adjusted offense level for that group would be 27. The Government also estimates that the Defendant is a criminal history category of I, leading to a guideline sentencing range of 70 to 87 months imprisonment.

THE COURT: Okay. Mr. Firestone, have you done an independent analysis of the guidelines?

MR. FIRESTONE: Yes, your Honor.

THE COURT: And is there anything you'd like to note about your analysis?

MR. FIRESTONE: Your Honor, we discussed with the Government, we're not stipulating to the Government's estimate. We're reserving the right to challenge any guidelines calculations that the Government recommends to Probation or Probation recommends to the Court.

THE COURT: As you're hearing, the Government has one estimate, your lawyer has another estimate, the probation department may have another estimate. The bottom line is that Judge Morrison is not bound by any of those estimates and she

may sentence you according to her interpretation of the sentencing guidelines under law.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: I would like to note that the parties' agreement does represent that if the Defendant pleads guilty on or before April 3, the Government is agreeing to the third point reduction for the acceptance of responsibility.

Is that correct, Mr. Skurnik?

MR. SKURNIK: Yes, your Honor. And that third point is incorporated into the guidelines estimate I gave you a moment ago.

THE COURT: Thank you. I wanted to note that for the record, that is also part of your agreement; by pleading guilty today, the Government has agreed that that third point for acceptance of responsibility should be reduced from whatever the ultimate guideline calculation is.

Does that make sense?

THE DEFENDANT: Yes, your Honor.

THE COURT: So, although Judge Morrison will certainly consider the sentencing guidelines as one factor in determining your ultimate sentence, as I noted she ultimately has the authority under the law to decide upon and impose a sentence that is more severe or less severe than what the guidelines recommend.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And even if the sentence is more severe, that in and of itself may not be a basis for a successful appeal from the judgment.

Do you understand that, Mr. Gugnin?

THE DEFENDANT: Yes.

THE COURT: Finally, under the federal sentencing guidelines system, there is no parole board or parole commission. What that means as a practical matter is that any sentence that you do receive from Judge Morrison will be petty close to the actual amount of time you need to serve in prison. You would not have the opportunity to appeal to a parole board or to some other body within the Federal Bureau of Prisons system because it just doesn't exist in the federal system.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Other than the promises and representations contained in the written agreement that we've just gone over, Mr. Gugnin, has anyone made any other promises to you that are causing you to plead guilty?

THE DEFENDANT: No.

THE COURT: Mr. Skurnik, is there anything else you think I should cover with regard to the Defendant's rights,

the nature of the charges, and the agreement itself?

MR. SKURNIK: No, your Honor.

THE COURT: Mr. Firestone, is there anything else you think I've missed?

MR. FIRESTONE: No, your Honor.

THE COURT: Mr. Gugnin, do you have any questions that you want to ask me or your lawyer about the charge, your rights, or anything else that might not be clear to you?

THE DEFENDANT: All clear, your Honor.

THE COURT: Are you ready to plea?

THE DEFENDANT: Yes.

THE COURT: Mr. Firestone, do you know of any reason why your client should not enter pleas of guilty to the four counts in the superseding information?

MR. FIRESTONE: I do not.

THE COURT: Are you aware of any legal defense to the charges?

MR. FIRESTONE: No, your Honor, none that would prevail at trial.

THE COURT: Mr. Gugnin, how do you plead to Count One of the superseding information, guilty or not?

At this point, it's just guilty or not guilty, and then I'll ask for the facts in a moment.

So, first, how do you plead to Count One, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Mr. Gugnin, how do you plead to Count Two of the superseding information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Mr. Gugnin, as to Count Three, the money laundering conspiracy, how to you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: As to Count Four, the violation of IEEPA, how do you plead?

THE DEFENDANT: Guilty.

THE COURT: Mr. Gugnin, are you making your pleas of guilty voluntarily and of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anyone threatened or forced or pressured you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made promises to you about what sentence you will receive from Judge Morrison if you do plead guilty?

THE DEFENDANT: No.

THE COURT: Mr. Gugnin, are you prepared to tell me in your own words what you did that would make you guilty of the four charges?

And Mr. Firestone, I take it there's interconnectedness to these charges so the allocution is one

allocution, or is it count-by-count?

MR. FIRESTONE: It is one allocution because there's a lot of overlap between the charges.

THE COURT: That's what I would have assumed based upon the way it's charged, but never want to make any assumptions.

Mr. Gugnin, whenever you're ready.

THE DEFENDANT: Yes, so, in 2022, I opened -- sorry, 2021, I opened the company in the United States in the State of Delaware called Evita Investments, Incorporated.

THE COURT: I'm sorry, could you say the name of the company?

THE DEFENDANT: E-V-I-T-A Investments --

THE COURT: Thank you.

THE DEFENDANT: -- Incorporated.

THE COURT: Thank you.

THE DEFENDANT: The original purpose of Evita was to crowdfund real estate projects; however, by 2022, the main business had changed to helping clients make international payments. After this change in focus, one of the purposes of Evita was to help Russian retail businesses pay suppliers who were located outside of Russia.

Because ruble is not an internationally convertible currency and because of Russian restrictions on the export of currency, these businesses had difficulty transferring money

directly from Russia to their creditors outside of Russia.

To help these businesses pay their creditors, I received orders from Russian and international brokers who helped customers remove money from Russian banks and convert this money to cryptocurrency. The brokers would then transfer the cryptocurrency to me in the United States. Using the United States banks and cryptocurrency exchanges, I then converted the crypto into dollars and wire transferred those dollars to my clients' creditors around the world. I received a commission on each transaction.

After February 24, 2022, and imposition of the U.S. sanctions on many Russian banks, U.S. financial institutions were generally unwilling to transact with Russian origin funds. Therefore, in order to operate this part of Evita's business, I misled U.S. financial institutions into accepting deposits from Evita and executing withdrawals from Evita's accounts at my direction. Specifically, on account opening documents, I indicated that I did not do business with Russia and with Russian customers, which was not true.

As a result, the financial institution's paperwork related to Evita transactions on behalf of Russian customers, both with respect to money coming in and money going out, concealed the source of the funds involved.

Although I deceived the banks, I understand that the banks did not suffer any monetary losses as all the funds that

were transferred out at my direction had been previously deposited by me or on behalf of the customers.

In 2016, I opened a personal account at Alpha Bank --

THE COURT: 2016?

THE DEFENDANT: Yeah, there's going to be a little bit of history.

THE COURT: Okay. Go ahead.

THE DEFENDANT: In 2016, I opened a personal account at Alpha Bank in Russia. After Alpha Bank was sanctioned in 2022, I asked an Alpha Bank representative via e-mail around April 8, 2023, whether Alpha Bank's system would automatically repay my loan balance if I added rubles to my account.

On October 6, 2022, while still in the United States, I debited my Alpha Bank account in the amount of 515,000 rubles. I knew that direct financial transactions with sanctioned Russian banks were prohibited for someone physically present in the United States.

Some of the transactions that I facilitated through Evita involve Russian customers whose purchases of items that now I know could not be exported from the U.S. without license from Department of Commerce. Although I did not and do not understand all the details and nuances of the export control regulations, I knew that such items were generally controlled and could potentially require a license. I did not obtain a

license and I was not aware of my customers obtaining a license.

I also know that the false statements I made to the U.S. banks and crypto exchanges impaired the ability of United States Government to track transactions involving Russia and to enforce the U.S. regulations regarding business with Russia.

In November 2023, I moved to New York and many of Evita's transactions passed through the Eastern District of New York, which I now understand to include Brooklyn, Queens, Staten Island, and Long Island.

THE COURT: All right. Thank you for all of that.

One question that I have for you is the proposed charges include conspiracy charges, and, so, I'd like to inquire as to whether or not you were working with others in this work and could you just provide a little information about that?

THE DEFENDANT: Sure.

As I have just explained, there were Russian-based and international brokers that gave me orders to execute those transactions.

THE COURT: And did you agree with them through your activities jointly undertaken with them to engage in these activities that you understood included moving money without the proper approvals with the purpose of promoting and

concealing the funds and engaging in transactions?

THE DEFENDANT: Yes.

THE COURT: Mr. Skurnik, what else do you think we should inquire about here?

MR. SKURNIK: Your Honor, I don't think there's anything further. I think the allocution satisfies the essential elements of the four counts.

THE COURT: Mr. Firestone, do you concur with Mr. Skurnik?

MR. FIRESTONE: Yes, your Honor.

And we discussed the allocution at length before coming in. Both the Government and defense counsel agree that it covers all the elements of the four counts in the superseding information.

THE COURT: Okay. I'm just re-reviewing the superseding information and all the elements. And I, with the supplementation that you were working with others, agree with you that there is sufficient information for Judge Morrison and me to find a factual basis for your guilty pleas to all four charges of the superseding information.

So, based upon all of the information given to me, I find that the Defendant is acting voluntarily, that he fully understands the charges against him, his rights, and the consequences of his waiver of indictment and plea, and that there are ample factual bases for the pleas to all four

counts. So, it is my recommendation to Judge Morrison that she accept Mr. Gugnin's guilty plea to all counts of the superseding information.

And I'm informed that a presentencing conference will be held on May 1, 2026, at 10:30 a.m. before Judge Morrison. So, that will be your next court date.

I'm also going to note for the record because it won't be reflected in the transcript that Mr. Gugnin was very engaged throughout the whole proceeding, he was very alert, he made eye contact most of the time, 85, 90 percent of the proceeding, and I have no doubt that he fully understands his rights, the consequences of his plea, and that he was fully prepared for the plea. So, thank you for that to defense counsel, both.

With that, is there anything further to do today, Mr. Skurnik?

MR. SKURNIK: Not from the Government, your Honor.

THE COURT: Mr. Firestone?

MR. FIRESTONE: No, your Honor.

THE COURT: Thank you all. Have a good rest of your day. Thank you, everyone.

(Matter concluded.)